ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>ANTHONIESKA AVILÉS CABRERA<br><br>Peticionaria | TA2026CE00601 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Caso Núm.:<br>B VI2026G0001<br>B LA2026G0024<br><br>Sobre:<br>Infr. Art. 93.A C.P.<br>Infr. Art. 6.06 Ley de Armas |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de mayo de 2026.

Compareció Anthonieska Avilés Cabrera (en adelante, "imputada", "acusada" o "peticionaria") mediante el recurso de *Certiorari* de epígrafe presentado el 12 de mayo de 2026. Solicitó la revocación de la *Resolución* emitida y notificada el 23 de abril de 2026, mediante la cual Tribunal de Primera Instancia, Sala Superior de Aibonito (en adelante, "foro de instancia"), denegó la solicitud de paralización de los procesos por razón de la procesabilidad de la acusada.

Hoy concluimos que el foro de instancia resolvió correctamente que, a la luz del informe pericial presentado por la defensa, es improcedente paralizar y activar los procedimientos de evaluación de procesabilidad por segunda ocasión al amparo de la Regla 240 de Procedimiento Criminal, *infra*. Según se discutirá en detalle, esto se debe a que del informe de la perito contratada por la defensa, la Dra. Rosa E. Negrón Muñoz, se puede concluir que la acusada comprende la naturaleza y el propósito de los

procedimientos en su contra, y que tiene la capacidad de consultar con su abogado y colaborar en su defensa.

Por los fundamentos expuestos a continuación, se **expide** el auto de *Certiorari* y se **confirma** la *Resolución* recurrida.

**-I-**

Por hechos ocurridos el, 11 de agosto de 2025, el Pueblo de Puerto Rico (en adelante, "Ministerio Público") presentó dos (2) *Denuncias*[1] contra Anthonieska Avilés Cabrera por violación al Artículo 93(A) del Código Penal, 33 LPRA sec. 5142 y el Artículo 6.06 de la Ley de Armas, 25 LPRA sec. 466e.

El 12 de septiembre de 2025, la defensa presentó *Moción solicitando evaluación conforme a la Regla 240 de Procedimiento Criminal.*[2] En esta, alegó que la imputada no comprendía la naturaleza de los procedimientos llevados en su contra y tampoco poseía la capacidad necesaria para asesorar o colaborar con los abogados en su defensa. En apoyo a tales alegaciones, adjuntó documentos del expediente de educación especial del Departamento de Educación. Por lo cual, solicitó al foro de instancia que ordenara una evaluación psicológica a la imputada y la vista de procesabilidad a los fines de dilucidar los resultados de la respectiva evaluación.

Ese mismo día, el foro de instancia emitió una *Resolución y Orden Regla 240 de Procedimiento Criminal,* enmendada y notificada el 15 de septiembre de 2025, en la cual ordenó la evaluación sobre la procesabilidad de la imputada y señaló vista al amparo de la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II, R. 240.[3]

Tras la celebración de dicha vista, el foro de instancia emitió *Resolución y Orden* el 17 de septiembre de 2025, reducida a escrito el 19 de septiembre de 2025, mediante la cual declaró no procesable

---

[1] SUMAC-TA, entrada núm. 1, anejo
[2] *Id.*, entrada núm. 5, anejo I.
[3] *Id.,* entrada núm. 1, anejo 4 (B).

a la imputada y ordenó su traslado inmediato al Hospital de Psiquiatría Forense de Ponce.[4] Consta en la *Minuta*[5] de esa vista que, el foro de instancia acogió —sin reparo de ninguna de las partes—la recomendación del Dr. José Domingo Malavé Orengo, psicólogo clínico y perito del tribunal, quien evaluó a la imputada y opinó como sigue:

> [...] tiene limitaciones para comprender ciertos aspectos del proceso legal [...] su nivel de atención es deficiente y variable; su proceso de información era muy lento y para poder reaccionar tenía que tomarse mucho tiempo. Su proyección durante la evaluación fue de mucha cooperación. Expres[ó] que, con las limitaciones que se identificaron durante la evaluación, entiende que al momento no puede cooperar adecuadamente con su defensa.[6]

Luego, el 24 de septiembre de 2025, la defensa instó *Moción urgente en solicitud de orden enmendada* en la cual solicitó al foro de instancia que ordenara al Hospital de Psiquiatría Forense de Ponce permitir la evaluación de la imputada por el Dr. Reynaldo Rodríguez Llauger y la Dra. Morayma García.[7] Al día siguiente, el foro de instancia emitió *Orden* mediante la cual concedió la solicitud.[8]

El 14 de octubre de 2025, la defensa presentó *Moción urgente para solicitar orden* en la que solicitó al foro de instancia que ordenara al Hospital de Psiquiatría Forense de Ponce a entregar copia del expediente médico de la imputada.[9] Ese mismo día, el foro de instancia emitió orden a esos efectos.[10]

El 15 de octubre de 2025, el foro de instancia celebró una vista de seguimiento de procesabilidad al amparo de la Regla 240 de Procedimiento Criminal, *supra*. Surge de la *Minuta*[11] de dicha vista que, el Dr. José Domingo Malavé Orengo indicó que evaluó a la

---

[4] *Id.,* entrada núm. 1, anejo 2.
[5] *Id.*, entrada núm. 5, anejo V.
[6] *Id.*
[7] *Id.,* entrada núm. 5, anejo VIII.
[8] *Id.*, entrada núm. 5, anejo X.
[9] *Id.*, entrada núm. 5, anejo XVI.
[10] *Id.*, entrada núm. 5, anejo XVII.
[11] *Id.*, entrada núm. 5, anejo XVIII.

imputada en el Hospital Psiquiátrico Forense de Ponce y opinó como sigue:

> [...] Al momento de ser evaluada se encontró que está orientada en tiempo, espacio y persona. Su contenido de pensamiento fue lógico, coherente y relevante. Est[a] presentó disminución en sus niveles de ansiedad y ánimo deprimido. Además, se pudo apreciar que se encontró aseada y mantenía buen contacto visual. Al presentarle los estímulos relacionales con el proceso del tribunal, se identificó que comprendió los roles, el proceso y presentó el comportamiento esperado de ella. Durante la evaluación se observ[ó] que se encontraba más enfocada, con mayor concentración y despejada. Por lo que se encuentra a la acusada **procesable.**[12]

Asimismo, consta en la *Minuta* que ambas partes tuvieron oportunidad de interrogar al Dr. José Domingo Malavé Orengo y que el foro de instancia acogió la recomendación de este último.

En esa misma fecha, 15 de octubre de 2025, el foro de instancia emitió y notificó por escrito una *Resolución Enmendada*, en la cual declaró procesable a la imputada y ordenó la continuación de los procedimientos.[13]

Tras la determinación de causa probable para acusar, el 3 de marzo de 2026, el Ministerio Publico presentó las acusaciones correspondientes.

Posteriormente, el 6 de abril de 2026, la acusada presentó *Moción solicitando paralización de procedimientos por razón de no procesabilidad*[14] al amparo de la Regla 240 de Procedimiento Criminal, *supra.* Alegó que dicha moción tenía el propósito de impugnar formalmente la determinación de procesabilidad de la acusada, a base de nueva evidencia clínica y educativa recopilada por la perito contratada por la defensa. En esencia, argumentó que procedía una nueva determinación de no procesabilidad por los fundamentos siguientes: (i) el carácter permanente de la discapacidad intelectual de la acusada, evidenciado desde su niñez;

---

[12] *Id.*, (énfasis en el original).
[13] *Id.,* entrada núm. 1, anejo 4 (A).
[14] *Id.,* entrada núm. 1, anejo 8.

(ii) la falta de capacidad mental suficiente de la acusada para comprender el proceso criminal en su contra y colaborar efectivamente en su defensa; (iii) que la edad mental de la acusada equivale aproximadamente a la de una menor de 11 años; y (iv) que el entorno donde se realizó la evaluación anterior era altamente estructurado y supervisado, por lo que no reflejaba la capacidad de la acusada para comprender y participar activamente en el proceso. Por lo cual, sostuvo que la perito contrata por la defensa concluyó que la acusada continuaba estando no procesable. Por último, informó que el informe pericial formal no estaba listo y que se reversaba el derecho de presentarlo posteriormente.

En desacuerdo, el 10 de abril de 2026, el Ministerio Público presentó su *Oposición a moción solicitando paralización de procedimientos por razón de no procesabilidad.*[15] Sostuvo que la solicitud de la defensa constituye una oposición o revisión tardía de una determinación previa de procesabilidad, ya advenida final y firme. Además, enfatizó que la solicitud se limita a presentar alegaciones genéricas e insuficientes sin el respaldo de evidencia pericial, según requiere la Regla 240 de Procedimiento Criminal, *supra.* Por todo lo cual, planteó que la referida solicitud es inoportuna e improcedente.

Ante esto, el foro de instancia emitió *Resolución* el 13 de abril de 2026, notificada al día siguiente, mediante la cual denegó la solicitud de paralizar los procedimientos por razón de no procesabilidad.[16]

El 13 de abril de 2026, la acusada presentó *Réplica Urgente a oposición del ministerio fiscal sobre solicitud de referido a Regla 240 de Procedimiento Criminal.*[17] En esta, la defensa sostuvo que la

---

[15] *Id.,* entrada núm. 1, anejo 9.
[16] *Id.,* entrada núm. 1, anejo 10.
[17] *Id.,* entrada núm. 1, anejo 11.

reanudación del proceso penal incrementó la complejidad de las etapas procesales, lo que ha dificultado la comunicación y entendimiento de la acusada. A raíz de lo anterior, la defensa identificó una psiquiatra forense con subespecialidad en niños y adolescentes, quien evaluó personalmente a la acusada y concluyó que esta no cumple con los criterios mínimos de procesabilidad. Además, anejó el informe pericial formal y una lista los documentos utilizados por psiquiatra forense.

El 20 de abril de 2026, el Ministerio Público presentó *Moción contestando réplica a oposición del ministerio público sobre solicitud de referido a Regla 240*.[18] Reafirmó sus planteamientos anteriores y añadió que la réplica de la defensa se limita a reiterar la solicitud de paralización de los procedimientos, sin alterar su teoría jurídica ni exponer fundamentos nuevos. En cuanto al informe pericial, puntualizó que, a pesar de que este se fundamenta en una combinación de entrevistas con la acusada y en la revisión de documentos médicos y educativos, no toma en cuenta entrevistas a pares, maestros, familiares cercanos o facultativos médicos que han estado a cargo de esta durante los pasados seis meses de reclusión. Asimismo, argumentó que el informe pericial no justifica la paralización de los procedimientos, ya que, aunque señala limitaciones cognitivas y funcionales en la acusada, también demuestra que esta responde preguntas, identifica los cargos imputados y comprende elementos básicos del proceso judicial. Por lo cual, sostuvo que la solicitud presentada por la defensa es improcedente.

Así las cosas, el 20 de abril de 2026, el foro de instancia celebró una vista argumentativa, en la cual las partes tuvieron oportunidad presentar sus posturas y argumentos al respecto.[19] Ese

---

[18] *Id.*, entrada núm. 1, anejo 14.
[19] *Id.*, entrada núm. 1, anejo 15.

mismo día, en corte abierta, el foro de instancia denegó la solicitud de paralización de los procesos al amparo de la Regla 240 de Procedimiento Criminal, *supra,* por razón de procesabilidad de la acusada.[20] Luego, el 23 de abril de 2026, el foro de instancia emitió y notificó *Resolución*[21] por escrito en la cual explicó como sigue:

> Resulta forzoso concluir, que a pesar de ciertas limitaciones intelectuales de la acusada no redundan en que est[é] ajena, no comprenda razonablemente las acusaciones, el proceso que se mantiene en su contra, las consecuencias, las nociones básicas de los mismos y el poder asistir en su defensa adecuadamente. Su estado mental no se encuentra enajenado y su comunicación, cooperación y comportamiento es uno adecuado.[22]
>
> .    .    .    .    .    .    .    .    .
>
> En cuanto al informe pericial presentado por la defensa y a los únicos fines de la solicitud de la Regla 240, infra, el Tribunal tuvo ante sí las cualificaciones de la perito y la consideró como tal. No obstante, conforme a derecho, en el justo y razonable uso de la discreción de este Tribunal concluimos que las determinaciones, información y hechos plasmados en el mismo no sostienen la conclusión de no procesabilidad.[23]

Inconforme, el 12 de mayo de 2026, la acusada acudió ante nos mediante el recurso de epígrafe y esbozó el señalamiento de error siguiente:

> ABUSÓ DE SU DISCRECIÓN EL JUEZ DEL TPI AL DECLARAR SIN LUGAR LA SOLICITUD DE PARALIZACIÓN PRESENTADA POR LA DEFENSA DE LA JOVEN ANTONIESHKA AVILES CABRERA PARA LA EVALUACIÓN DE PROCESABILIDAD BAJO LA REGLA 240 DE PROCEDIMIENTO CRIMINAL, A PESAR QUE LA DEFENSA SUSTENTÓ SU SOLICITUD CON PRUEBA QUE SUPERA EL ESTÁNDAR REQUERIDO EN LA REGLA PROCESAL, VIOLANDO DE ESA FORMA, EL DEBIDO PROCESO DE LEY Y LOS DERECHOS QUE DE EL EMANAN.[24]

Por su parte, el 19 de mayo de 206, la Oficina del Procurador General presentó su *Escrito en cumplimiento de orden.*[25]

Así pues, perfeccionado el recurso, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

---

[20] *Id.*
[21] *Id.*, entrada núm. 1, anejo 17.
[22] *Id.*, pág. 5.
[23] *Id.*, pág. 13.
[24] *Id.*, entrada núm. 1, pág. 7.
[25] *Id.*, entrada núm. 6.

**A. *Certiorari* criminal**

El recurso de *Certiorari* un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Pueblo Guadalupe Rivera,* 206 DPR 616, 632 (2021); *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372, (2020); *Pueblo v. Díaz De León,* 176 DPR 913, 917 (2009). Esto es, distinto al recurso de apelación, el foro revisor puede expedir el auto de *Certiorari* de manera discrecional. *Pueblo v. Rivera Montalvo,* supra; *Pueblo v. Díaz De León,* supra, pág. 918. Sin embargo, la discreción del Tribunal revisor no es irrestricta. *Pueblo v. Rivera Maldonado,* supra. Así pues, nuestro ordenamiento jurídico aclaró que el foro revisor al ejercer su discreción debe hacerlo con cautela y por razones de peso. *Pueblo v. Díaz De León,* supra, pág. 918.

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025), establece unos criterios para que el Tribunal Intermedio ejerza con prudencia su discreción al momento de atender una solicitud de expedición de un auto de *Certiorari. Pueblo v. Rivera Maldonado,* supra. En lo pertinente, la referida regla establece los criterios siguientes:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A.   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.    Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.    Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.    Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. *Id.*

Cabe precisar que nuestro Tribunal Supremo ha expresado que, de ordinario, el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Maldonado*, supra, pág. 373.

## B. Regla 240 de Procedimiento Criminal

La Constitución de los Estados Unidos, así como la Constitución de Puerto Rico, consagran la garantía fundamental de que ninguna persona será privada de su propiedad o libertad sin un debido proceso de ley. Véase, Emda. XIV, Const. EE.UU., LPRA, Tomo 1; Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. Cónsono con ello, la Regla 239 de Procedimiento Criminal, 34 LPRA Ap. II, R. 239, dispone que "[n]inguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada". Esto es, una persona acusada de delito no puede enfrentar un juicio a menos que sea procesable. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 364 (2020). El concepto de "procesabilidad" alude a la "lucidez con la que un imputado [o acusado] de delito puede entender la naturaleza y el procedimiento criminal al que se enfrenta". *Pueblo v. Pagán Medina,* 178 DPR 228, 237 (2010). Por tanto, el imputado o acusado será procesable si se encuentra "lo suficientemente coherente como para que le pueda proveer a su abogada la información necesaria o relevante para la elaboración de su

defensa". *Id.*, pág. 239 (énfasis omitido). Este, además, "debe ser capaz de comprender el significado del juicio y entender el papel que él desempeña en el proceso". *Id.*, (énfasis omitido).

En síntesis, la procesabilidad del imputado o acusado está compuesta por dos criterios medulares: (1) la capacidad para comprender la naturaleza y el propósito de los procedimientos en su contra; y (2) la capacidad para consultar con su abogado y colaborar en su defensa. *Pueblo v. Santiago Torres*, 154 DPR 291, 306 (2001). El primer criterio de la procesabilidad exige que el imputado o acusado comprenda los factores siguientes:

> (1) los cargos imputados; (2) el rol del juez o jurado, del fiscal y la defensa; (3) los derechos que le cobijan; (4) las diferentes alegaciones —Regla 68 de Procedimiento Criminal, *supra*— y sus consecuencias; (5) los posibles veredictos —Regla 146 de Procedimiento Criminal, *supra*— y sus efectos, ello incluye que de ser hallado culpable procede la imposición de una sentencia.

*Id.*, págs. 306-307 (citas omitidas).

El segundo criterio de la procesabilidad implica que el imputado o acusado tenga la capacidad de realizar una serie de actuaciones para la preparación de su defensa, a saber:

> (1) comunicarse efectivamente con su abogado; (2) cooperar eficazmente con su abogado; (3) recordar y relatar hechos relacionados con sus acciones; (4) seguir instrucciones; (5) identificar testigos, ayudar a localizarlos y a interrogarlos; (6) tomar decisiones, luego de una completa explicación de las alternativas, y (7) testificar eficientemente y, a su vez, ser contrainterrogado.

*Id.*, pág. 307 (citas omitidas).

Particularmente, la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II, R. 240, establece el procedimiento a seguir para determinar la procesabilidad del imputado o acusado como sigue:

> (a) *Vista; peritos.* En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, **si el tribunal tuviere evidencia**, además de la opinión del representante legal del imputado o acusado, **que estableciere mediante preponderancia de la prueba que el acusado está mentalmente incapacitado, o que éste no es capaz de comprender el proceso y colaborar con su defensa** como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación, **suspenderá los procedimientos y señalará una vista para**

> **determinar el estado mental y/o funcional del acusado**. Una vez se señale esta vista, deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental y/o funcional. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes. **En estos casos, la representación legal del imputado o acusado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de evidencia pericial de tal incapacidad**, dentro de un término no menor de tres (3) días antes de la fecha señalada para la vista de que se trate.

(Énfasis suplido).

Resulta pertinente señalar que, el lenguaje original de la Regla 240 de Procedimiento Criminal autorizaba al tribunal a suspender los procedimientos cuando existiera una mera *base razonable para creer* que el acusado estaba incapacitado mentalmente. Esto es, en el contexto de la Regla 240, el criterio de *base razonable para creer* "conlleva el deber del juez de instancia de asegurarse que la persona que esta siendo procesada no se encuentre mentalmente incapacitada; o sea, que se encuentre hábil para entender cabalmente los procedimientos". *Pueblo v. Pagán Medina*, supra, pág. 241. Por tanto, "la Regla le concede inicialmente al tribunal total discreción en la determinación de si existe base razonable o no para creer que el acusado está mentalmente incapacitado". *Pueblo v. Rodríguez Galarza*, 117 DPR 455, 457 (1986).

Sin embargo, la Ley Núm. 281-2011 enmendó la Regla 240 de Procedimiento Criminal y sustituyó el criterio de base razonable por el estándar de *preponderancia de la prueba* para acreditar la no procesabilidad del acusado.[26] En términos sencillos, esta enmienda implica que la incapacitad mental del imputado o acusado debe demostrarse inicialmente mediante evidencia suficiente para convencer al tribunal de que es más probable que la persona no está capacitada para ser procesada. Este estándar es menos riguroso que

---

[26] Tal enmienda es cónsona con *Medina v. California*, 505 U.S. 437 (1992), donde la Corte Suprema resolvió que imponer en la defensa la carga de probar, por preponderancia de la evidencia, que el imputado o acusado no está procesable, no viola el debido proceso de ley.

el de "más allá de duda razonable", utilizado para determinar culpabilidad en casos criminales, pero más exigente que una simple sospecha o "base razonable". Por ello, el lenguaje de la actual Regla 240 expresamente exige que la solicitud de procesabilidad sea acompañada con evidencia pericial que demuestre la incapacidad alegada.

A la luz de esta normativa, la profesora Dora Nevares Muñiz explicó como sigue:

> Cuando se plantea la incapacidad de ser sometido al proceso, es necesario que el tribunal tenga una base razonable para creer que el acusado no es procesable. Si la defensa logra crear mediante preponderancia de prueba...una duda sustancial en el tribunal sobre la capacidad del acusado para entender el proceso que contra él se sigue, se detendrán los procedimientos, se referirá el acusado para evaluación por los peritos el Estado y se señalará una vista, una vez evaluado mentalmente, para que el juez determine si la persona está procesable o no.

D. Nevares Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, 10.[a] ed. rev., Puerto Rico, Instituto para el Desarrollo del Derecho, Inc., 2014, pág. 169.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En el presente caso, la peticionaria alegó que el foro de instancia abusó de su discreción al denegar la solicitud de paralización de los procedimientos al amparo de la Regla 240 de Procedimiento Criminal, *supra,* toda vez que la prueba presentada superó el estándar requerido. Adelantamos que no tiene razón. Sin embargo, antes de abordar el planteamiento de la peticionaria, resulta pertinente repasar algunos hechos procesales del presente caso. Veamos.

Consta en el expediente que, una vez el Ministerio Público presentó las *Denuncias*, la defensa solicitó por primera vez que la imputada fuera evaluada psicológicamente al amparo de la Regla 240 de Procedimiento Criminal, *supra.* El foro de instancia así lo

ordenó y luego celebró una vista de procesabilidad en la cual acogió —sin reparo de ninguna de las partes— la recomendación del Dr. José Domingo Malavé Orengo. Esto es, el foro de instancia determinó que la imputada estaba no procesable y ordenó su traslado al Hospital Psiquiátrico Forense de Ponce. Posteriormente, el foro de instancia celebró una vista de seguimiento de procesabilidad, en la cual acogió la recomendación del Dr. José Domingo Malavé Orengo y declaró procesable a la imputada.

Resulta importante enfatizar que, durante ambas vistas de procesabilidad, tanto la defensa como el Ministerio Público tuvieron oportunidad de interrogar al Dr. José Domingo Malavé Orengo. Además, tuvieron oportunidad de presentar la evidencia, incluyendo los peritos que entendieran pertinente, pero no lo hicieron. Nótese que consta en el expediente que, en el ínterin entre ambas vistas, la defensa solicitó autorización al foro de instancia para que dos facultativos médicos —el Dr. Reynaldo Rodríguez Llauger y la Dra. Morayma García— evaluaran a la imputada en las instalaciones del hospital donde se encontraba internada y, nuevamente, así lo concedió el foro de instancia. Sin embargo, del expediente no surge si dicha evaluación llegó a realizarse ni cuáles fueron los resultados obtenidos. Tampoco consta en el expediente ante nuestra consideración que la defensa haya presentado alguna solicitud de reconsideración de la determinación de procesabilidad emitida el 15 de octubre de 2025 por el foro de instancia. Lo que consta en nuestro expediente es que, una vez se determinó la procesabilidad de la imputada, se reanudó el procedimiento criminal.

No obstante, luego de la determinación de causa probable para acusar, la defensa presentó el 6 de abril de 2026 una solicitud de paralización de los procedimientos al amparo de la Regla 240 de Procedimiento Criminal, *supra* —sin acompañarla con la evidencia pericial requerida por dicha disposición legal— en la cual expresó

su intención era impugnar formalmente la determinación de procesabilidad de la acusada, por no haber concurrido con dicha determinación. Posteriormente, el 13 de abril de 2026, presentó otra solicitud con los mismos fines, acompañada en esta ocasión de un informe pericial.

Adviértase que, a pesar del incumplimiento con los requisitos establecidos en la Regla 240 de Procedimiento Criminal, *supra*, el foro de instancia celebró una vista argumentativa y concedió a ambas partes la oportunidad de expresarse en torno a la solicitud de paralización y al informe pericial presentado.[27] Así pues, tras escuchar a las partes y aquilatar la prueba presentada conforme al *quantum* de evidencia requerido, el foro de instancia denegó la solicitud de paralizar los procedimientos por razón de procesabilidad de la acusada. De dicha determinación acude la peticionaria ante este foro revisor.

Exponemos de antemano que, no existe razón para alterar la *Resolución* recurrida. Tampoco surge del expediente —ni la peticionaria ha demostrado— que el foro de instancia haya actuado bajo pasión, prejuicio o parcialidad o algún error manifiesto. La *Resolución* recurrida es correcta y la determinación tomada es conforme a derecho y a la discreción del juez del foro de instancia.

Según explicamos en el acápite II de esta *Resolución*, la Regla 240 de Procedimiento Criminal establece del procedimiento a seguir para determinar la procesabilidad del acusado. 34 LPRA Ap. II, R. 240. Dicha disposición requiere que la defensa presente una moción mediante la cual solicite la paralización de los procedimientos y acompañe la evidencia pericial sobre la incapacidad mental del acusado. *Id.* Además, requiere que tal evidencia establezca,

---

[27] Ello, por supuesto, en armonía en la norma reiterada de que una determinación de procesabilidad bajo la Regla 240 de Procedimiento Criminal, *supra,* no tiene efecto de cosa juzgada, pues esta puede plantearse nuevamente en cualquier etapa previo a la sentencia ante circunstancias que ameriten una reevaluación de la capacidad de la persona acusada.

mediante *preponderancia de la prueba,* que el acusado está mentalmente incapacitado para comprender el proceso y colaborar en su defensa. *Id.* En otras palabras, la defensa debe demostrar con evidencia suficiente que el acusado es más probable que no esté capacitado para ser procesado.

Asimismo, explicamos que en Puerto Rico la procesabilidad del acusado se determina a base de dos criterios medulares. El primer criterio de procesabilidad consiste en *la capacidad del acusado para comprender la naturaleza y el propósito de los procedimientos en su contra,* es decir, que comprenda: (1) los cargos imputados; (2) el rol del juez o jurado, del fiscal y la defensa; (3) los derechos que le cobijan; (4) las diferentes alegaciones; (5) los posibles veredictos. *Pueblo v. Santiago Torres,* supra. El segundo criterio de procesabilidad se basa en *la capacidad del acusado para consultar con su abogado y colaborar en su defensa,* lo cual incluye: (1) comunicarse y cooperar con su abogado; (2) recordar y relatar los hechos de lo ocurrido; (3) seguir instrucciones; (4) identificar testigos; (5) tomar decisiones tras la explicación de las alternativas, y (6) testificar y ser contrainterrogado. *Id.*

Al examinar, desde esta perspectiva, el *Informe pericial de procesabilidad* realizado por la Dra. Rosa E. Negrón Muñoz y presentado por la defensa, concluimos que no se demostró — mediante *preponderancia de la prueba*— que la acusada no esté capacitada para ser procesada. Es decir, la defensa no logró convencer ni al foro de instancia ni a este Tribunal de que sea más probable que la acusada padezca una condición de tal magnitud que le impida comprender la naturaleza y el propósito de los procedimientos en su contra, así como consultar con su abogado y colaborar en su defensa. Nos explicamos.

En cuanto al primer criterio de procesabilidad sobre *la capacidad de la acusada para comprender la naturaleza y el*

*propósito de los procedimientos en su contra,* consta en el informe pericial que la acusada le expresó a la doctora lo siguiente: (1) que los cargos que enfrenta son "asesinato y ley de armas"; (2) que el delito de asesinato era grave "porque alguien se mató"; (3) que el delito de asesinato era en primer grado "porque es más fuerte, porque es un asesinato y hay una persona muerta"; (4) que el asesinato en segundo grado significa que "hay menos oportunidades de que te den 99 años"; (5) que el delito de asesinato en todos sus grados podían darle 99 años "pero más en el primero"; (6) que el delito de ley de armas significaba que "te pueden llevar presa", "dependiendo del arma 5 o 10 años"; (7) que forman parte del proceso penal la "'jueza, fiscal y lo que le conté ayer", refiriéndose al alguacil y el jurado'; (8) que el rol de la defensa es "para defenderme" y que sus abogados son "Rocio, Athelyn, María y el muchacho que vino ayer"; (9) que el rol del fiscal es "hacer la investigación y defender la otra parte", "hacerle justicia a Lela, la otra parte"; (10) que los fiscales eran "Carlos y la muchacha" y que estos no estaban para ayudarla; (11) que el alguacil es "el que está conmigo en la sala, el que me da el papel, el que me entra en la celda y el que me esposa"; (12) que el rol del juez es "escuchar ambas partes y tomar una decisión"; (13) que el rol del jurado es "para dar más investigación del caso".

Obsérvese que la acusada entiende los cargos por los cuales se le acusa, así como las penas a las que se enfrenta. Además, conoce a grandes rasgos los roles del juez, jurado, fiscal y defensa. Nuestro ordenamiento no exige que una persona acusada de delito posea conocimientos técnicos o especializados en derecho, sino que pueda comprender los procedimientos. Esto es, el estándar aplicable no requiere un entendimiento jurídico detallado o sofisticado, sino la capacidad básica de comprender la naturaleza del proceso penal. A base de lo previamente reseñado, es evidente, que la defensa no

logró demostrar que la acusada no comprende la naturaleza y el propósito de los procedimientos en su contra.

En cuanto al segundo criterio de procesabilidad sobre *la capacidad de la acusada para consultar con su abogado y colaborar en su defensa,* surge del informe pericial que esta "es capaz de comunicarse y describir su interpretación o percepción de los hechos". Asimismo, consta en el informe que la doctora tuvo que "hacerle preguntas en términos simples, en ocasiones repetirle la pregunta...hablarle lento, pedirle que repitiera lo que se le cuestionó para evaluar si había entendido la pregunta, y permitirle que contestara sin presión y a su paso". Añadió que, la acusada no ha mostrado un comportamiento disruptivo ni problemas en mantener una conducta apropiada en el tribunal. Además, sostuvo que la acusada "podría testificar de manera pertinente respecto a su percepción de los hechos".

Basado en lo anterior, procede concluir que al momento de la evaluación la acusada puede comunicarse y cooperar con sus abogados, en la medida que puede recordar y relatar los hechos desde su propia percepción, e incluso es capaz de testificar en el tribunal, aunque con ciertos acomodos razonables, tales como el uso de un lenguaje sencillo y la concesión de tiempo suficiente para procesar la información. Recordemos que el foro de instancia no puede limitarse a considerar la condición mental o el coeficiente intelectual de la acusada, sino que debe considerar el efecto adverso de dicha condición sobre los criterios medulares de la procesabilidad. *Pueblo v. Santiago,* supra. Esto es, el tribunal debe evaluar si tal condición impide que el acusado entienda el proceso en su contra y asista a su abogado en la preparación de la defensa. Por tanto, colegimos que la defensa no demostró que el hecho de padecer una discapacidad intelectual produce, por sí solo, un efecto

adverso sobre la capacidad de la acusada para consultar con su abogado y colaborar en su defensa.

Sin embargo, apartándose del contenido de su propio informe pericial, la Dra. Rosa E. Negrón Muñoz opinó que la acusada "no posee un grado racional y fáctico, ni comprende el alcance y la naturaleza de las posibles sanciones en su contra". Asimismo, opinó que la acusada "posee una comprensión básica y limitada de la naturaleza adversativa del proceso penal". Añadió que, debido a la discapacidad intelectual de la acusada, esta "no posee una capacidad básica limitada para poder tomar decisiones informadas y racionales con respecto a su caso". En resumen, la Dra. Rosa E. Negrón Muñoz concluyó que la acusada no se encuentra procesable; no obstante, esa conclusión es incongruente con el resto de los hallazgos discutidos en el cuerpo de su informe, en el cual se consignó que la acusada posee una compresión básica de la naturaleza de los procedimientos que enfrenta y que es capaz de consultar y colaborar en su defensa.

Ante este escenario incongruente entre el contenido del informe pericial y la conclusión de la Dra. Rosa E. Negrón Muñoz, no debe ser sorpresa que el foro de instancia resolvió que el referido informe pericial no sostiene una conclusión de no procesabilidad. Es decir, el foro de instancia concluyó que la defensa no cumplió con el estándar de *preponderancia de la prueba* requerido por la Regla 240 de Procedimiento Criminal, *supra.* La profesora Dora Nevares Muñiz sostiene que se paralizarán los procedimientos "[s]i la defensa logra crear mediante preponderancia de prueba...una duda sustancial en el tribunal sobre la capacidad del acusado para entender el proceso que contra él se sigue". D. Nevares Muñiz, *op. cit.*

Luego de revisar con detenimiento el expediente del presente caso, coincidimos con el foro de instancia en que, aun cuando

medien limitaciones intelectuales, en el presente caso no se ha probado que la acusada está ajena o incapacitada para comprender de manera razonable las nociones básicas de las acusaciones en su contra, el proceso penal que enfrenta y sus consecuencias, ni de asistir o colaborar en la preparación de su defensa. Concluimos, pues, que la defensa no persuadió ni al foro de instancia ni a este Tribunal de que sea más probable que la acusada padezca una condición de tal magnitud que le impida comprender la naturaleza y el propósito de los procedimientos en su contra, así como consultar con su abogado y colaborar en su defensa. En consecuencia, en este momento es innecesario que se active el procedimiento dispuesto en la Regla 240 de Procedimiento Criminal, *supra*. Tampoco hemos identificado ningún atisbo de prejuicio, arbitrariedad o error craso en la actuación del foro de instancia que derrote nuestra deferencia hacia el foro de instancia.

**-IV-**

En fin, el Tribunal de Primera Instancia concluyó correctamente que era innecesario e improcedente paralizar y activar los procedimientos de evaluación de procesabilidad por segunda ocasión al amparo de la Regla 240 de Procedimiento Criminal, *supra*, toda vez que la defensa y el informe pericial de la Dra. Rosa E. Negrón Muñoz, no logró persuadir al Tribunal que sea más probable que la acusada padezca una condición de tal magnitud que le impida comprender la naturaleza y el propósito de los procedimientos en su contra, así como consultar con su abogado y colaborar en su defensa.

Por los fundamentos expuestos previamente, se **expide** el auto de *Certiorari* y se **confirma** la *Resolución* recurrida.

En consideración a que este caso se encuentra en etapa de juicio, a tenor con lo dispuesto en la Regla 35 (A) (1) y la Regla 84 (E) del Reglamento del Tribunal de Apelaciones, el Tribunal de

Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin necesidad de tener que esperar por nuestro mandato.[28]

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[28] Véase, Regla 35 (A) (1) y Regla 84 (E) del Reglamento del Tribunal de Apelaciones, según enmendado, *In Re Aprob. Enmda. Reglamento TA*, 2025 TSPR 141, pág. 58 y 119-120, respectivamente, 216 DPR ____ (2025).